EXHIBIT B

Bass Management, Inc.
4120 Brady Mountain Road
Royal, Arkansas 71968
Phone: (501) 767-3422
Fax: (501) 767-6506
E-mail: bradymtn@hsnp.com

July 6, 2006

Burke S. Torrey
Chief, Real Estate Division
Department of the Army
Vicksburg District, Corps of Engineers
4155 Clay Street
Vicksburg, Mississippi 39183-3435

Re: ***Bass Management, Inc.'s demand for return of excess rent payments and other contractual and regulatory relief***

Dear Mr. Torrey

This letter is written to you as Contracting Officer ("CO") for the U. S. Department of the Army, Corps of Engineers ("Corps") for the Lease Agreement effective January 1, 1996 ("Lease"), between the Corps and Bass Management, Inc. ("Bass Mgmt.") for the Brady Mountain Resort ("Resort") at Lake Ouachita, Garland County, Arkansas. The Lease bears the designation of No. DACW38-1-96-46. This demand is submitted pursuant to the Dispute Clause in Paragraph 32 of the Lease and applicable law and regulations.

## I. Demand for return of money

Bass Mgmt. demands that the Corps return the excess rental payments it made from 2003 through May 2006 in the total amount of $122,009, plus interest. See Exhibit "A" attached to this letter for the calculation. Bass Mgmt. also demands that the Corps stop requiring Bass Mgmt. to pay rent based on the Corps unilateral and arbitrary verbal change to the Lease made in 2003. In 2003, the Corps imposed on Bass Mgmt. and its sublessees a requirement that rental no longer be based upon Bass Mgmt.'s gross receipts but rather those receipts plus the gross receipts of the sublessees.

This unilateral action was improper and unauthorized under the Lease. This arbitrary action breaches the word and intent of this contract and the practice from its inception through 2002. Accordingly, Bass Mgmt. is entitled to recovery of the excess rent, plus interest, it had to pay as result of the Corps requiring it to calculate the annual rental rates and pay monthly rent based on the sum of the sublessees' gross income added to Bass Mgmt.'s gross receipts.

### a) Clear meaning

Paragraph 2. Consideration of the Lease sets out the method for calculating the annual percentage and monthly rental payment. The calculation of both the annual "Revised Graduated Rental System" rate and the monthly rent payment is based on gross receipts. Subparagraph 2 a.(1) provides that "Gross receipts are defined as the total of the concessionaire's receipts from business operations conducted on the premises, including receipts of sublessees and licensees."

From 1996 through 2002, the parties correctly understood that the "Gross Receipts" definition found in Paragraph 2 a.(1) of the Lease meant Bass Mgmt.'s gross receipts. The definition defines Gross Receipts as "the total of the concessionaire's receipts." This phrase "the total of the concessionaire's receipts" is central to the definition. By this definition, to state the obvious, "the concessionaire" is not the concession. One is a business entity, the other is real estate. One is a lessee, the other is property leased and the right of use attached to the lease. Accordingly, receipts of "the concessionaire" are less than receipts of all business activity within the concession, because sublessees also operated within the concession.

The "Gross Receipts" definition plainly limits itself to "the concessionaire's receipts"; it does NOT say gross income of all the various business entities that operate within the concession. "[T]he concessionaire" is Bass Mgmt. The receipts that constitute "Gross Receipts" are therefore Bass Mgmt.'s gross receipts. The subordinate, tag on phrase, "including receipts of sublessees" cannot expand "the concessionaire's receipts" to include receipts that are not Bass Mgmt. receipts.

Some of the receipts of sublessees are included in "the concessionaire's receipts," because the sublessees make rental payments to Bass Mgmt. Thus the phrase "including receipts of sublessees" means in this context, rental payments of sublessees received by Bass Mgmt. are to be included in the "Gross Receipts" reported to the Corps. This is how Bass Mgmt. reported "Gross Receipts" from 1996 through 2002.

On the other hand, Bass Mgmt.'s gross receipts do not include the third party sublessees' gross income. The sublessees are independent business entities, with their own ownership, assets, debts and books and records. Bass Mgmt. has no control, ownership of or interest in its sublessees. The sublessees' income comes from independent operations. Bass Mgmt. has no interest in or control over these separate businesses' income. The total of Bass Mgmt.'s receipts simply do not and cannot include gross income of its sublessees. Thus "the total of the concessionaire's receipts" cannot reasonably be read to encompass the gross receipts of the sublessees.

Since "the total of the concessionaire's receipts" does not include the gross income of the sublessees, it is incorrect and improper to require the sublessees gross income be included in the rent calculation of either the annual rental percentage or monthly rental payment. When the Corps imposed this requirement on Bass Mgmt., it exceeded its authority and breached the contract. The Corps was not entitled the excess rental payments made by Bass Mgmt. and those payments must be returned.

**b) Surrounding circumstances**

Bass Mgmt. correctly interpreted the Lease to only require reporting of its gross receipts. To repeat, that is how Bass Mgmt. reported its "Gross Receipts" to the Corps from 1996 through 2002. That understanding was consistent with the practice under the earlier lease agreement assigned to Bass Mgmt. in 1986. As you will recall, under the old lease agreement, the Corps'

monthly reporting form broke out by line items the various activities that made up Gross Receipts. These included receipts from activities such as "Income from dive shops." Guided by this format, Bass Mgmt. entered the income received from a sublessee and its operation in the applicable detail line. Rather than continue that format, the monthly reporting form for the new Lease, simply lumped all those activities together into a single "Gross Receipts" line. Given this context, it is obvious that the subordinate tag on phrase "including receipts of sublessees" served as a reminder those sublessee payments to Bass Mgmt. continued to be included in Gross Receipts report. Thus, while the new Lease made a dramatic increase in the rental percentages, the practice of reporting only Bass Mgmt.'s gross receipts did not change.

By letter dated December 20, 1995, you forwarded the new Lease to Bass Mgmt. In the letter as the CO you specifically instructed Bass Mgmt. to apply the rental percentage, which you based on Bass Mgmt.'s gross income, to "your gross sales." To a layman, "gross sales" means gross receipts or income and "your" clearly referred to Bass Mgmt. That was a clear instruction by you for Bass Mgmt. to pay on its gross receipts. You said nothing about including sublessees gross receipts. Your instruction was entirely consistent with Bass Mgmt.'s understanding of what was intended by the Corps and its understanding of the "Gross Receipts" definition in the new Lease.

Indeed, at the time Bass Mgmt. signed the Lease, it had an existing sublease with Hill's Lake Escape ("Hill's") (referred to as "Hill's old sublease"). The Hill's old sublease had been approved by the Corps. Hill's old sublease had a fixed, flat rate rental fee similar to the rental provision in the current sublease.[1] The Hill's old lease made no provision for monthly reporting of its gross receipts to Bass Mgmt. or the Corps. It made no provision for paying a percentage of its gross receipts to Bass Mgmt. for pass through to the Corps. Accordingly, in January 1996 Bass Mgmt. would have had no ability to comply with the new Lease if the current 2003 Corps requirement had then been in place. Moreover, if Bass Mgmt. had been required to start using Hill's gross income in calculating and paying rent, then overnight Bass Mgmt. would have started losing money on the Hill's old sublease. Literally, Bass Mgmt. would have had to pay out of its own pocket to have the Hill's operate out of the Resort. Such a result is untenable and conflicts with the guiding principles applicable to all government contracts.

Approximately two (2) years later in 1998, Bass Mgmt. submitted a new Hill's sublease to you for review and approval. That new sublease continued the fixed flat rate rental by requiring an annual rental payment of $2000 for a floating office and $1000 per boat slip. The new sublease had no specific provision for monthly reporting Hill's gross receipts and no specific provision for pass through payments to the Corps based on a percentage of Hill's gross income. Surely if the Corps intended for Bass Mgmt. to report to the Corps and to pay the Corps based on including Hill's gross receipts rather than the agreed fixed flat rate rental then the Corps would not have approved the Hill's sublease. After careful review you as the CO approved the new Hill's sublease as written.

---

[1] Bass Mgmt. has been unable to locate a copy of this old Lease but best recollection is that in material parts it followed the 1998 sublease.

If Bass Mgmt. had any idea the Corps was going to dictate a change in how "Gross Receipts" was calculated then it would not have agreed to a new sublease with Hill's that would be a money loser with this change. Bass Mgmt. was comfortable continuing the fixed flat rate rent with Hill's because two (2) years earlier, you had instructed Bass Mgmt. to pay rent on "your gross sales."

**c) 2003 Required change**

For reasons that are unclear, very early in 2003 a representative of the Corps instructed Bass Mgmt. that the Corps was unilaterally changing the method of calculating "Gross Receipts." We understand the Corps also instructed sublessees to make this change. The Corps required Bass Mgmt. and its sublessees to begin to report and pay based on including the sublessees gross income along with Bass Mgmt.'s gross receipts in making the rental calculation. This change was arbitrarily dictated by the Corps. It constitutes a breach of the clear wording of the Lease, was contrary to the intent of the Corps and Bass Mgmt. in 1996 and changed the practice followed from 1996 to 2002.

You and your staff failed and refused to reduce this verbal directive to writing. Under compulsion Bass Mgmt. complied with the new requirement to the best of its ability. This unilateral, unauthorized change increased expenses and strained Bass Mgmt.'s relationship with its sublessees.

**d) Relief**

Bass Mgmt. demands return of all excess rent, plus interest, paid to the Corps since it unilaterally imposed the unauthorized amendment to the Lease in 2003. Bass Mgmt. calculates the overpayment to be $122,009, plus interest. See Exhibit "A." In addition to the return of the excess rental payments, Bass Mgmt. demands that the Corps immediately cease and withdraw its requirement that Bass Mgmt. add the sublessees' gross income to its gross receipts when calculating the annual rental percentage and monthly rental payment. And that you affirm that for the duration of the January 1, 1996 Lease, the Corps follow the intended definition that "Gross Receipts" means only Bass Mgmt.'s gross receipts.

**II. Competitor favoritism relief**

The Corps has been providing excessive and improper favoritism to Mountain Lake, Inc. which operates the Mountain Harbor Resort Commercial Concession on Lake Ouachita (referred to as "Mountain.") The favoritism has provided a financial windfall to Mountain since at least 1996. It has placed Bass Mgmt. at an unfair competitive disadvantage. The unfair financial benefits include: (1) adding over 144 acres to Mountain's concession in 1998 while allowing Mountain to continue the old declining percentage, essentially 1% rental formula. When Bass Mgmt. added land to its concession in 1996, the Corps required a new lease. The new lease had graduated rental rates. This graduated rental rate resulted in Bass Mgmt. paying substantially more rent than it would have paid under its old rent calculation. The old rent calculation was

like the 1% rate Mountain was allowed to continue to use. (2) The Corps allowed Mountain to tie into and use a sewer system operated by the Corps free of charge. This free sewer service has been a substantial financial and operational windfall to Mountain. Upon information and belief, Mountain continues to enjoy this free service. (3) In 2003 the Corps initiated and caused to be initiated an audit of Bass Mgmt. Upon information and belief Mountain has not been subject to an audit.

This audit was not intended to examine the accuracy of Bass Mgmt.'s monthly report of its gross receipts for 1999-2001. Rather the audit is premised on an erroneous assertion that Bass Mgmt. should have included sublessees' gross income in its reports. The "audit" was continued even though the Corps, in an Estoppel Certificate signed by you in October 2003, certified that Bass Mgmt. was not in default of any term or condition of the Lease Agreement. It appears the audit was intended to increase expenses and impede and disrupt Bass Mgmt.'s efforts to expand and to improve the Resort. This provides a huge competitive advantage to Mountain.

As CO you are charged with the duty and obligation to be fair and even handed. Stated guiding principles of the Federal Acquisition System require the promotion of competition and the conduct of the [Corps] business with integrity, fairness and openness. *See 48 CFR §1.102.* The Lease Agreement between the Corps and Bass Mgmt. has an implied covenant of good faith and fair dealing and of cooperation. Yet in spite of these mandates, the Corps has provided a substantial financial benefit to Mountain through highly favorable rental rates, free services and "a free ticket" from any audit. There is no rational, prudent business bases for this preferential treatment of Mountain.

In order to level the playing field and to compensate Bass Mgmt. for the unfair financial burden imposed by this conduct, Bass Mgmt. demands you as CO and the Corps to equitably adjust its rental rate downward to 1% of Bass Mgmt.'s gross receipts (gross sales) for a period of a minimum of ten (10) years or such longer time as required to restore competitive balance between Mountain and Bass Mgmt. In addition, you and the Corps must allow Bass Mgmt. to tie into the existing Corps sewage treatment system for the operating fee (if any) paid by Mountain.

### III. Cease pattern of harassment

As mentioned above, in October 2003 in your capacity as CO, you issued an Estoppel Certificate to the Summit Bank. In the Estoppel Certificate you certify that Bass Mgmt. is not in default with any term of the Lease Agreement. Both Bass Mgmt. and Summit Bank relied upon this certification in consummation of a loan. Indeed, in reliance on your word spoken in your official capacity, Bass Mgmt. borrowed nearly $1,000,000 that was then used to make improvements at the Lake Ouachita concession.

At the time the Estoppel Certificate was issued, your staff had months earlier verbally required Bass Mgmt. to change the method of calculating gross receipts by adding in the gross income of sublessees. It is undisputable, that both you and your staff knew how Bass Mgmt. had calculated Gross Receipts from 1996 through 2002. The Estoppel Certificate demonstrates the

2003 change in rent calculation to include gross income of sublessees was an unauthorized, unilaterally imposed requirement that was not contemplated by the language of the Lease Agreement or original intent of the parties.

In spite of your certification that, in essence, the method of calculating and paying rent used by Bass Mgmt. from 1996 through 2002 complied with the Lease, the Corps has caused the audit of Bass Mgmt. discussed above. As noted, the audit was premised upon the unfounded accusation that Bass Mgmt. had been incorrectly calculating rent from 1996 through 2002. The Corps has also initiated a debarment proceeding based on the same unfounded accusation.

Accordingly, you must inform the auditors that Bass Mgmt. was in compliance with the Lease when from 1996 through 2002 it submitted monthly "Gross Receipts" reports based upon Bass Mgmt.'s gross income. And you must also inform the auditors that because Bass Mgmt. and the Summit Bank relied on your certification of compliance in obtaining the nearly $1,000,000 loan, that the Corps and auditors cannot in good conscious, fairness and equity content Bass Mgmt. was not in compliance because it reported only its gross receipts from 1996 through 2002.

In addition as CO you, as well as your staff, and other Corps employees must cease the discriminatory conduct intended to harass, intimidate and punish Bass Mgmt. You must cease requiring Bass Mgmt. to give you assurances of compliance with provision of the Lease such as fire code and disabled access, where these demands are not made of other concessionaires and compliance has been adequately reviewed during the yearly compliance inspection. Similarly, you must report to appropriate parties that as CO you have found based on the language, intent and practice that Bass Mgmt. not only demonstrated its good faith belief it was acting properly in reporting Gross Receipts from 1996 through 2002 but also the Corps now agrees that Bass Mgmt. was correct and will be refunding excess rental paid by Bass Mgmt. since 2003.

Since the amount of money sought exceeds $50,000, I certify this demand is submitted in good faith and that to the best of my information and belief all of the above matters are true, correct and complete and the calculation of excess rent payments are accurate and complete. I have also attached a verified certification as Exhibit "B" which is part of this demand.

I look forward to your prompt response.

Sincerely,

Benton N. "Ned" Bass
President, Bass Management, Inc.

BNB:abb
Enclosures

# BASS MANAGEMENT, INC.

## "CALCULATION OF EXCESS RENT PAYMENTS TO CORPS OF ENGINEERS"

| | 2003 | 2004 | 2005 | THRU MAY 2006 |
|---|---|---|---|---|
| BASS GROSS RECEIPTS SUBJECT TO CORPS RENT | $1,622,025 | $1,840,054 | $1,794,913 | $735,482 |
| RENT PERCENTAGE | 2.6% | 2.9% | 3.0% | 2.90% |
| ACTUAL AMOUNT OWED TO CORPS | $42,173 | $53,362 | $53,847 | $21,329 |
| PAYMENT TO CORPS PER MONTHLY REPORTS (INCLUDING SUB LESSEE PASS THRUS) | 66,847 | 93,285 | 98,305 | 34,283 |
| EXCESS RENT PAYMENTS TO CORPS OF ENGINEERS | $24,674 | $39,923 | $44,458 | $12,954 |

EXHIBIT

4

**CERTIFICATION**

Benton N. "Ned" Bass, after being duly sworn, states the following:

1. My name is Benton N. "Ned" Bass. I am the primary owner and operator of Bass Management, Inc..("Bass Mgmt."). I am the President of Bass Mgmt. and authorized to make this certification on its behalf.

2. Bass Mgmt. operates Brady Mountain Resort concession located on property leased from the U. S. Department of Army, Corps of Engineers ("Corps") at Lake Ouachita, Garland County, Arkansas. I have operated the Brady Mountain Resort since 1986. In late 1995, Bass Mgmt. signed a new lease with the Corps for the Brady Mountain Resort. The new Lease Agreement was effective January 1, 1996.

3. Pursuant to Paragraph 32. Dispute Clause of the Lease Agreement, Bass Mgmt. is submitting a demand to the Corps for return of excess rent paid to the Corps from 2003 to the present and other relief. The demand letter is being submitted to Mr. Burke S. Torrey, the Contracting Officer for the Corps. This verified certification is submitted as part of the demand.

4. The demand for return of excess rent and other relief is made in good faith and with the good faith belief that Bass Mgmt. is entitled to the relief.

5. I certify that to the best of my knowledge, information and belief that the matters set out in the demand letter are true, complete and correct. I further certify that to the best of my knowledge, information and belief Bass Mgmt. is entitled to the $122,009 plus interest demanded and the calculation of that amount is accurate and complete.

EXHIBIT

B

THIS THE 6 day of July, 2006.

Benton N. "Ned" Bass
President, Bass Management, Inc.

STATE OF AR
COUNTY OF Garland

VERIFICATION

I, Benton N. "Ned" Bass, am President of Bass Management, Inc. and am authorized to sign on its behalf and state on oath that I have signed the foregoing certification in my capacity as President of Bass Management, Inc., and the statements contained therein are true and correct to the best of my knowledge, information and belief.

Benton N. "Ned" Bass

SUBSCRIBED AND SWORN to before me, a Notary Public, this 6th day of July, 2006.

NOTARY PUBLIC

My Commission Expires: June 23, 13

SHEILA CLAYTON
Garland County
My Commission Expires
June 23, 2013

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

OFFICIAL USE

VICKSBURG, MS 39183

UNIT ID: 0903

| | | |
|---|---|---|
| Postage | $ | 0.87 |
| Certified Fee | | 2.40 |
| Return Receipt Fee (Endorsement Required) | | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 5.12 |

Postmark Here

Clerk: KKVFSY

07/06/06

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, June 2002 See Reverse for Instructions

7005 1160 0003 0835 3022

**UNITED STATES POSTAL SERVICE**

***** WELCOME TO *****
ALBERT PIKE STA
HOT SPRINGS, AR 71913-9998
07/06/06 02:48PM

| | | | |
|---|---|---|---|
| Store | USPS | Trans | 181 |
| Wkstn | sys5004 | Cashier | KKVFSY |
| Cashier's Name | | Kenneth | |
| Stock Unit Id | | SIAKEN | |
| PO Phone Number | | 501-623-7462 | |
| USPS # | | 0451330903 | |

1. First Class 5.12
   Destination: 39183
   Weight: 2.40 oz.
   Postage Type: PVI
   Total Cost: 5.12
   Base Rate: 0.87
   SERVICES
   Certified Mail 2.40
   70051160000308353022
   Rtn Recpt (Green Card) 1.85
2. 39c Lb/Flg PS100 39.00

| | |
|---|---|
| Subtotal | 44.12 |
| Total | 44.12 |
| Cash | 60.00 |
| Change Due Cash | 15.88 |

Order stamps at USPS.com/shop or call 1-800-Stamp24. Go to USPS.com/clicknship to print shipping labels with postage. For other information call 1-800-ASK-USPS.

Number of Items Sold: 2

Thank You
Please come again!

P. 01

# TRANSACTION REPORT

JUL-10-2006 MON 07:14 AM

TX (MEMORY)

| # | DATE | START TIME | RECEIVER | COM. TIME | PAGES | TYPE/NOTE | DEPT | FILE |
|---|---|---|---|---|---|---|---|---|
| 001 | JUL-10 | 07:12 AM | 18016315254 | 0:02:08 | 10 | 6G3 OK | | 538 |
| | | | TOTAL | 0:02:08 | 10 | | | |

FAXED TO CORPS.