IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BASS MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 07-056C<br>(Chief Judge Damich) |

**REVISED JOINT PRELIMINARY STATUS REPORT**

Pursuant to Rule 16 and Appendix A of the Rules of the United States Court of Federal Claims ("RCFC") and the Court's Order of June 29, 2007, the parties file this Revised Joint Preliminary Status Report:

**(A) Does the court have jurisdiction over the action?**

**By the Plaintiff:** The Court has subject matter jurisdiction over the claims pursuant to the Contract Dispute Act 41 U.S.C. §609, et. seq. and the Tucker Act 28 U.S.C. §1491.

Bass Management, Inc. ("Bass") has a Lease Agreement with the Corps of Engineers ("Corps") for a commercial recreational concession on Lake Ouachita, Arkansas. The Lease Agreement has a Dispute Clause found at Paragraph 32 that provides claims that arise under the lease or that relate to the lease are to be resolved under the provisions of the Dispute Clause paragraph or the Contract Dispute Act. The Lease Agreement is Exhibit "A" to the Amended Complaint.

On July 6, 2006 Bass sent a demand letter to the Contracting Officer seeking return of excess rent of no less than $122,009 and other relief. In two separate letters the Contracting Officer said he would respond by December 18, 2006. Then by letter dated on November 9,

2006, the Contracting Officer indefinitely delayed responding to the demand letter for "as long as allegations of fraud remain." *See* Exhibits B, C, D and G to the Amended Complaint. The "allegations of fraud" originated with the Contracting Officer and the Corps' Vicksburg District. The "allegations of fraud" are based on an unstated assumption that not only is Bass' interpretation of the contract incorrect but also "fraudulent." This response begs the question, since the question is: What is the correct interpretation? In essence, the indefinite delay constitutes a denial of any relief sought. The November 9, 2006 response constitutes a final decision.

The indefinite delay is also unreasonable. The Lease Agreement requires Bass to continue to pay excess rent until the dispute is resolved. The indefinite delay penalizes Bass while insuring the Corps gets excess rent "indefinitely." This delay also prevents Bass from seeking additional funding for improvements at the concession, prevents Bass from pursuing business opportunities and impairs Bass' business relationship with sublessees and others.

The Contracting Officer's letter of November 9, 2006 is a final decision. Under the terms of both the Dispute Clause in the Lease Agreement and the Contract Dispute Act, Bass had the right to file suit in this Court. Bass filed this action on January 24, 2007.

The Court's subject matter jurisdiction over Counts 1 and 2 is not disputed. The contract interpretation issue is central to the dispute; accordingly, the parties propose dealing with the contract interpretation issue first. The parties also propose that the remaining claims and related jurisdictional questions be deferred. The parties believe that resolving the contract interpretation question first will facilitate a resolution of the remaining issues.

As a practical note, a new Contracting Officer has been appointed to administer the Lease Agreement. Bass has approximately 14 years remaining on the Lease Agreement, thus the parties have an ongoing relationship. Bass needs for the contract interpretation dispute to be

resolved while trying to rebuild a cooperative working relationship with the new Contracting Officer and the Corps. Since the remaining claims involve allegations of bad faith, the factual development is likely to be contentious and emotionally laden. Those claims will be subject to time-consuming and expensive discovery. Focus on the contract interpretation question will achieve economy and efficient use of the parties' and the Court's time. Bass believes resolving the contract interpretation question will enable the parties to resolve the remaining issues.

Generally, Counts 3, 5 and 6 involve a nonmonetary dispute related to the Lease Agreement between Bass and the Corps. There has been a final decision of the Contracting Officer on the disputed matter. The Tucker Act provides for "jurisdiction to render judgment upon any claim by…or dispute with a contractor…including…nonmonetary disputes on which a decision of the Contracting Officer has been issued…." Accordingly, the Court has subject matter jurisdiction over those claims. The appropriate relief for nonmonetary disputes depends on the circumstances, but can include a declaratory judgment or injunctive relief. *See e.g. Alaska Pulp Corporation v. United States*, 38 Fed. Ct. 141, 145 (Fed. Ct. 1997). *See also* Rule 65, RCFC.

For example, in the July 6, 2006 Demand Letter, Bass states on page 6 "[Y]ou must also inform the [DCAA] auditors that because Bass Management and the Summit Bank relied on your certification of compliance [in October 2003] in obtaining the nearly $1,000,000 loan, that the Corps and auditors cannot in good conscience, fairness and equity contend Bass Mgmt. was not in compliance because it reported only its gross receipts from 1996 through 2002." *See* Exhibit B to the Amended Complaint. This relief was denied by the Contracting Officer. The Court has subject matter jurisdiction over this nonmonetary dispute. The Court can issue an Order that provides the appropriate relief.

Another example, in Count 6 Bass seeks to enjoin the Corps from continuing to assert Bass intentionally and/or improperly underreported gross receipts in performing the Lease Agreement. In the Demand Letter Bass states at page 6 "[Y]ou must report to appropriate parties that as [Contracting Officer] you have found based on the language, intent and practice that Bass Mgmt. not only demonstrated its good faith belief it was acting properly in reporting Gross receipts from 1996 through 2002 but also the Corps now agrees that Bass Mgmt. was correct and will be refunding excess rental paid by Bass Mgmt. since 2003." The Contracting Officer denied this relief. Thus the Court has subject matter jurisdiction over this nonmonetary dispute pursuant to the Tucker Act 28 U.S.C. §1491(a) and can issue an Order providing the appropriate relief.

The "appropriate parties" include the DCAA auditors who continue to sit on the purported audit of Bass. It also includes the Suspension/Debarment official of the Department of Defense, Procurement Fraud Branch ("PFB"). PFB is holding its suspension/debarment Show Cause action in abeyance due to this litigation. In doing so, the PFB said, "The interpretation of this clause [on how the rent due to the Corps is calculated] is the crux of the Show Cause letter PFB sent Bass." Accordingly, Bass seeks nonmonetary relief to insure that other governmental arms are told Bass' interpretation is correct or, in the alternative, in good faith.

As noted, a new Contracting Officer has been appointed. Plaintiff believes that appointment moots the claims in Counts 4 and 7. Plaintiff will seek a voluntary dismissal without prejudice of Counts 4 and 7.

A Count 8 is proposed by Motion For Leave to File a Second Amended Complaint. Count 8 will seek, as alternative relief, reformation of the Lease Agreement due to mistake, as well as, commercial impractability that results from the Corps new interpretation. It also seeks restitution of the excess rent payments. As set out above in Count 1, the Court has subject matter jurisdiction over the Lease Agreement dispute pursuant to the Contract Dispute Act and the

Tucker Act. This Court has jurisdictional power to reform the Lease Agreement and to award restitution. *See Gould, Inc. v. United States*, 67 F.3d 925, 928 (Fed. Cir. 1995), *Bromley Contracting Co., Inc. v. United States*, 596 F.2d 448 (Ct. Cl. 1979); *Landmark Sand Co., Inc. v. Federal Deposit Ins. Corp.*, 256 F. 3d 1365 (Fed. Cir. 2001).

**By the Defendant**: Defendant does not believe that this Court possesses jurisdiction to entertain Counts III, IV, V, VI, and VII of the complaint.

Counts III, V, VI, and VII allege claims seeking different types of injunctive relief that this Court cannot award. Each count seeks a grant of prospective relief not tied to or subordinate to a money judgment. See Count III "Estoppel" (alleging that the defendant "must be permanently estopped and forever enjoined from asserting or in any manner suggesting Bass was in default on any term or condition of the Lease Agreement in any respect prior to the time the Estoppel Certificate was executed in October 2003" (Complaint at ¶ 136)); Count V "Injunction: Competition" (alleging that the defendant "must be permanently enjoined and prohibited from providing an unfair competitive advantage to Mountain and for giving Mountain unfair preferential treatment to the competitive disadvantage of Bass" (Complaint at ¶ 149)); Count VI "Injunction: Stop Accusations" (alleging that the defendant "must be permanently enjoined or prohibited from asserting that Bass under-reported its Gross receipts by failing to include its sublessee gross income in the Gross receipts number reported to the Corps and from using any variation of that assertion as a bases for refusing to consider or to block Bass's proposal to purchase any other Corps administered concession, for refusing to issue an Estoppel Certificate, and for refusing to provide Bass with a recommendation for other business opportunities" (Complaint at ¶ 153)); Count VII "Mandatory Injunction" (seeking this Court to "require the Secretary of the Army to transfer the administration of the Brady Mountain concession" to the Corps of Engineers, Little Rock District "and to prohibit the Corps officials in the Vicksburg

District from having an input into or influence over the supervision and administration of any Bass operated commercial concession" (Complaint at ¶ 157.)) Accordingly, jurisdiction is not proper for any of these claims. See New York Power Authority v. United States, 42 Fed. Cl. 795, 802 (1999) ("The Claims Court does not have the general equitable powers of a district court, to grant prospective relief." (quoting Bowen v. Massachusetts, 487 U.S. 879, 905 (1988)). Moreover, this Court does not possess jurisdiction to entertain plaintiff's claims for prospective relief simply because plaintiff raised those claims in a certified claim to the contracting officer. If that were the case, a plaintiff could assert any claim for relief before a contracting officer thus rendering the jurisdictional requirements for this Court null and void.

As to Count IV "Violation of Regulation," the plaintiff alleges that it is entitled to relief because the defendant exhibited a "pattern of favoritism and preferential treatment" towards competitors of the plaintiff and that this favoritism violated Federal Acquisition Regulations requiring contracting officers to provide impartial, fair and equitable treatment. See Complaint at ¶¶ 137-145 (citing 48 C.F.R. § 1.102(b)(1)(iii) and 48 C.F.R. § 1.602-2(b)). Plaintiff, however, fails to set forth any evidence to overcome the presumption that Government officials act conscientiously and in good faith. See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002); D.V. Gonzalez Elec. & Genera Contractors, Inc. v. United States, 55 Fed. Cl. 447, 457 (2003). As the complaint is absent "well-nigh irrefragable proof" of bad faith, Count IV fails to state a claim. Id. (citing Schweiger Constr. Co. v. United States, 49 Fed. Cl. 188, 1999 (2001).

Defendant will oppose plaintiff's motion to amend the complaint, which was filed on July 9, 2007. The motion seeks to add a Count VIII ("Reformation and Restitution") to the complaint. The proposed Count VIII fails to state a claim upon which relief may be granted, and thus, the motion should be denied. See National Australia Bank v. United States, 452 F.3d 321,

1329 (Fed. Cir. 2006) ("Reformation of a written agreement on the ground of mutual mistake is an extraordinary remedy. . . .")

At this time, defendant is not aware of any reason to challenge the Court's jurisdiction regarding Counts I and II in the complaint.

**(B) <u>Should the case be consolidated with any other case and, if so, why?</u>**

No.

**(C) <u>Should trial of liability and damages be bifurcated and, if so, why?</u>**

Yes. The parties disagree about how to interpret the term "Gross receipts" found in paragraph 2 of the Lease Agreement. The parties believe that resolving the meaning of "Gross receipts" through limited discovery and cross motions for summary judgment will prompt an efficient outcome. Thus, the parties believe that at this time deferring consideration of Counts III, IV, V, VI, and VII, and on VIII, if plaintiff's motion to amend the complaint is granted, offers the potential for an efficient resolution of the entire matter. Similarly, determination of damages, if any, should involve a straight forward calculation, which the parties believe may be resolved by agreement or written submission.

**(D) <u>Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?</u>**

No.

**(E) <u>In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?</u>**

No.

**(F) <u>Will additional parties be joined?</u>**

No.

**(G) <u>Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, if so, what is the schedule for the intended filing?</u>**

Following the completion of limited discovery concerning the interpretation of the "Gross receipts" provision of the Lease Agreement, the parties intend to file cross motions for summary judgment regarding the correct interpretation of "gross receipts." Depending on the outcome of the central contract issue, either or both parties may file a RCFC 12(b), 12(c) or 56 motion in connection with the deferred claims. The parties believe, however, that resolving the "Gross receipts" issue may allow the parties to resolve the remaining issues by agreement in lieu of further discovery or motions practice.

**(H) <u>What are the relevant and factual and legal issues?</u>**

**By the Plaintiff:** At the center of the dispute is the interpretation of the definition of "Gross Receipts" found Paragraph 2(a)(1) of the Lease Agreement between Bass Management, Inc. ("Bass") and the Corps of Engineers ("Corps). Paragraph 2(a)(1) reads: "Gross receipts are defined as the total of the concessionaire's receipts from business operations conducted on the premises, including receipts of sublessees and licensees." The Lease Agreement is attached as Exhibit A to the Amended Complaint.

From the inception of the Lease Agreement on January 1, 1996 through 2002, the Plaintiff interpreted the provision to include the receipts of sublessees paid to it as rent when calculating "Gross receipts." Beginning in 2003, however, the Corps verbally imposed a new interpretation that required Bass to include the sublessees gross income in calculating "Gross receipts." Bass seeks return of the excess rent paid to the Corps since 2003 using this new interpretation, plus interest.

Bass' interpretation is correct. The core language in the definition is the phrase "the total of the concessionaire's receipts." Bass is "the concessionaire." Thus "the concessionaire's

receipts" means receipts that belong to Bass. The subordinate phrase "including receipts of sublessees" at the end of the sentence does not change the meaning. Rather the phrase explains that sublessees rental payments to Bass are to be included in "the concessionaire's receipts." That subordinate phrase does not expand the scope of "the total of the concessionaire's receipts" to include gross income of sublessees in which Bass has no interest.

This interpretation is consistent with other provisions in the Lease Agreement. For example, Paragraph 18(f) provides that any payment to Bass by a private service company doing work on the premises is to be included in gross receipts. The provision does not require Bass to include the gross payment received by the company for its service.

Here even if the definition of "Gross receipts" is viewed as ambiguous, then Bass' interpretations controls. The Corps drafted the Lease Agreement; thus, ambiguity must be resolved in favor of Bass. In December 1995 the Contracting Officer instructed Bass to calculate rent by applying the percentage to "your gross sales." *See* Exhibit F to the Amended Complaint. The Contracting Officer's use of the phrase "your gross sales" shows he understood the definition of "Gross receipts" to include sublessees rental payments to Bass. Those are the only receipts of the sublessees that were part of Bass' gross sales. This instruction together with the practice that followed show the intended interpretation in 1996 was the same as Bass' interpretation.

Lastly, as an alternative legal basis for relief, Bass seeks reformation of the Lease Agreement due to mistake at the time the Lease Agreement was signed as well as due to the commercial impracticality imposed on Bass from the Corps' current interpretation. The Corps new interpretation results in Bass paying more on its sublessees operations than the sublessees are required to pay in rent.



JO.99364064.1

Bass had an existing sublessee when the Lease Agreement was signed. That sublease had a fixed rate annual rental for each boat slip rented and for a floating office. That sublease was renewed in 1998 with a similar fixed rate. The Corps approved both the original and renewed subleases. Currently this sublessee annual gross income makes up roughly one-third or more of the gross income of the concession operations.

The parties have jointly requested the Court defer consideration of the other claims. The parties believe that resolving the contract interpretation issue first will enable the parties to resolve remaining claims. The factual bases of the other claims are described in some detail in the Amended Complaint.

Generally these remaining claims allege bad faith conduct of the Corps related to the contract and competitive favoritism in connection with administering the contract. While a Plaintiff has a heavy burden to overcome a presumption of good faith, the bad faith conduct here is egregious. For example, with full knowledge of Bass' practice from 1996 to 2002, the Contracting Officer certified in an Estoppel Certificate that Bass was not in default on any term of the Lease Agreement. Within weeks of that certification, however, the Corps began to assert Bass had engaged in fraudulent conduct. The evidence will show this 180 degree shift was motivated by a bad faith intention to retaliate against and punish Bass.

By comparing the Contracting Officer's administration of the Lease Agreement with Bass to that of a favored concessionaire, Bass will show the Corps provided free water and sewer and other preferences to the favored concessionaire while denying a sewer connection and cutting off a water line connection to Bass. The facts will also show a pattern of arbitrary and capricious action related to the Lease Agreement that unfairly burdens and imposes unwarranted expenses on Bass. The Contracting Officer's actions establish the bad faith conduct and violation of the proper standard of conduct in administering the Lease Agreement with Bass.

**By the Defendant:** Defendant believes the principal issue in dispute is whether the term "Gross receipts," as defined in paragraph 2 of the Lease Agreement, should be construed as including the gross income of sub-lessees or whether it should be construed as including receipts of sub-lessees and licensees received by the plaintiff. The definition of "Gross Receipts" includes the gross income of the sublessees and that this gross income must be included when calculating the rental payments due from the plaintiff to the defendant.

The plain and unambiguous language of paragraph 2 of the Lease Agreement supports the defendant's interpretation of "Gross Receipts." As stated in paragraph 2 of the Lease Agreement, "Gross Receipts are defined as the total of the Concessionaire's receipts <u>from business operations conducted on the premises, including receipts of sublessees and licensees.</u>" (Emphasis added). It is clear from this definition, that in calculating lease payments under the Lease Agreement, the plaintiff must include the receipts of its sublessees and licensees generating income on the property. Plaintiff unreasonably contends that the language "from business operations conducted on the premises, including receipts of sublessees and licensees" does not modify "concessionaire's receipts." If that interpretation were allowed to stand, it would render meaningless the plain language of the lease provision.

As for Counts III, IV, V, VI, and VII of the complaint, defendant does not believe that this Court possesses jurisdiction to entertain those claims. <u>See</u> Section 4(a), above.

Defendant will oppose plaintiff's motion to amend the complaint to add a Count VIII ("Reformation and Restitution"). As will be set forth in more detail in defendant's forthcoming opposition to plaintiff's motion, the plaintiff fails to allege any facts that could reasonably lead to the conclusion that the parties to the Lease Agreement were mutually mistaken in their belief about the meaning of "Gross Receipts." Similarly, the plaintiff sets forth no facts in its amended complaint that gives rise to any reasonable inference of a unilateral mistake. In other words, the

proposed amended complaint does not allege that the defendant intended any other interpretation of the Lease Agreement aside from that on the face of the agreement, whether it was the "original" Lease Agreement or the subsequent "unilateral change" which the plaintiff alleges.

Plaintiff's proposed amended complaint also fails to allege facts to support a claim for restitution. Specifically, the amended complaint fails to set forth facts alleging that the plaintiff paid excess rent in performance of a contract later breached or repudiated by the defendant.

Defendant also believes that the complaint is barred by the doctrine of waiver. Plaintiff alleges in its complaint that since early 2003 "Bass has added what it reasonably believes to be the sublessees' gross income to the Gross receipts number reported to the Corps and in calculating rental payment.' Complaint at ¶ 48. In other words, since 2003, the plaintiff admits that it has been attempting to comply with the terms of the Lease Agreement as construed by the defendant. Under equitable doctrine of waiver, once a litigant fails to timely pursue or defend a known claim, equity forbids a court from enforcing the right seeking to be vindicated, and the action is thereby dismissed.

**(I) <u>What is the likelihood of settlement? Is alternative dispute resolution contemplated?</u>**

**By the Plaintiff**: The Plaintiff believes the matter can be settled with some guidance from the Court.

**By the Defendant**: Settlement does not appear likely at this time; however, the parties should continue to explore settlement options as discovery proceeds and is completed. Similarly, as discovery proceeds, the defendant believes the parties may be amenable to alternative dispute resolution. The parties believe that resolution of issues related to the "Gross receipts" provision

may facilitate settlement by agreement and/or mediation of the remaining issues.

**(J) <u>Proposed Scheduling Plan</u>**

i. At this time, the parties do not anticipate proceeding to trial. Subject to the Court's direction, the parties presently believe that the resolution of the contract provision can be decided upon cross motions for summary judgment. If this matter cannot be resolved upon dispositive motions concerning the contract provision, trial will be necessary concerning the meaning of the "Gross receipts" provision. In the event this matter were to proceed to trial on the "Gross receipts" issue, the parties agree that deferring consideration of the remaining counts would be appropriate. A trial solely upon the contract provision would last approximately 2-3 days. Little Rock, AR would be an appropriate place for the trial to occur.

ii. Joinder of Additional Parties: Not applicable.

iii. Dispositive Motions: As discussed in Section G, above, following the completion of limited discovery, the parties intend to file cross motions for summary judgment concerning the interpretation of the "Gross receipts" provision of the Lease Agreement forty-five days after the close of fact discovery. Opposition briefs should be filed within 30 days after the motions are filed, and reply briefs should be filed within 14 days after service of the opposing papers.

iv. Whether the case should be conducted in phases: The parties believe that the case should be conducted in phases. Determination of damages, if

any, should involve a straightforward calculation which the parties believe may be resolved by agreement or written submission.

v. Proposed Discovery Plan:

| | |
|---|---|
| Exchange of Initial Disclosures | **August 6, 2007** |
| Plaintiff's Proposed Close of Fact Discovery | **October 10, 2007** |
| Defendant's Proposed Close of Fact Discovery | **April 17, 2008** |
| Plaintiff's Proposed Deadline for Cross Motions for Summary Judgment | **November 30, 2007** |
| Defendant's Proposed Deadline for Cross Motions for Summary Judgment | **June 2, 2008** |
| Plaintiff's Proposed Deadline for Responses to Cross Motions | **January 15, 2008** |
| Defendant's Proposed Deadline for Responses to Cross Motions | **July 2, 2008** |

vi. Parties do not anticipate the need for experts.

vii. Parties do not anticipate the need for expert discovery.

viii. The presumptive discovery limit shall apply in this case.

ix. Neither mental examinations nor physical examinations of the subject property are necessary in this case.

x. Any other matters pertinent to the completion of discovery or that counsel deem appropriate for inclusion in the joint scheduling plan? Yes. The parties believe limited discovery on issues related to the "Gross receipts" provision will expedite resolution of the entire dispute. Consequently, the parties jointly request this Court to permit limited discovery and accept briefing on those issues while deferring discovery and consideration of the remaining issues.

**(K) <u>Are there special issues regarding electronic case management needs?</u>**

No.

**(L) <u>Is there other information of which the court should be aware at this time?</u>**

Yes. Plaintiff filed a motion on July 9, 2007 to amend the Complaint in order to add, as an alternative relief, a Count seeking reformation and restitution. Defendant will oppose this motion because this Court does not possess authority to reform the contract under the circumstances of this case.

Counsel for the parties represent that they have held an early meeting of counsel, conducted telephonically on June 11, 2007 and again on July 11, 2007.

Counsel for both parties are available for a preliminary status conference on July 31, August 14 or August 16, 2007.

**<u>Appendix to the Joint Preliminary Status Report</u>**

June 29, 2007 Letter from the Procurement Fraud Branch of the Department of the Army.

Respectfully submitted,

<u>/s/ ***Frank W. Trapp***</u>

Frank W. Trapp, MB #8261
Phelps Dunbar LLP
111 East Capitol Street • Suite 600
Jackson, Mississippi 39201-2122
P. O. Box 23066
Jackson, Mississippi 39225-3066
Telephone: (601) 352-2300
Facsimile: (601_360-9777
ATTORNEYS FOR PLAINTIFF

Respectfully submitted,

PETER D. KEISLER

Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/ David M. Hibey
DAVID M. HIBEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 307-0163
Fax: (202) 514-8624

July 20, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on this 20th day of July, 2007, a copy of the foregoing Joint Preliminary Status Report" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

***/s/David M. Hibey***