IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BASS MANAGEMENT, INC., Plaintiff, v. THE UNITED STATES, Defendant. | ) | Case No. 07-056C (Chief Judge Damich) |

**DEFENDANTS OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

Defendant, the United States, respectfully submits this memorandum in support of its opposition to plaintiff's motion for leave to amend its complaint.

The Government opposes the motion by plaintiff for leave to file its second amended complaint because the proposed amendment would be futile. Plaintiff's proposed amended complaint fails to state facts that could lead to a claim for relief upon the theories of reformation and restitution, and thus could not withstand a motion to dismiss under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Accordingly, plaintiff's motion should be denied.

**BACKGROUND**

The dispute in this matter concerns the monthly rental payments due the Government arising out of the plaintiff Bass Management, Inc.'s ("Bass") lease agreement with the United States Army Corps of Engineers ("Corps" or "Government") to operate the Brady Mountain Resort commercial concession at Lake Ouachita, Arkansas. Compl. ¶ 17-28. Specifically the parties disagree as to the definition of the term "gross receipts" in paragraph 2 of the lease agreement: "Gross receipts are defined as the total of the Concessionaire's receipts from

business operations conducted on the premises, including receipts of sublessees and licensees." See lease agreement attached to the complaint as Exhibit A. Bass alleges that this provision included only Bass's gross income, not the gross receipts of its sublessees. Compl. ¶ 29-31. The Government believes that the plain language of the provision requires the plaintiff to include the receipts of its sublessees and licensees generating income on the property.

Bass filed the present action in the Court of Federal Claims on January 24, 2007. Bass amended the complaint on January 29, 2007 due to typographical errors in the original pleading. On April 25, 2007, the Government filed its answer. Bass now seeks again to amend its complaint to add claims for reformation and restitution.

## SUMMARY OF THE ARGUMENT

Courts will not grant leave to amend a complaint where the relief sought by the amendment would be futile. An amendment is futile if the claim it seeks to add would not survive a motion to dismiss. Bass seeks to amend its complaint to add a claim Bass captions as "Reformation and Restitution." Bass's proposed amended complaint, however, fails adequately to allege facts that would raise its right to relief on these claims above the merely speculative level. Bass adds no new factual allegations. Instead, Bass repeats allegations previously made and makes the conclusory statement that there was either a mutual mistake or a unilateral mistake sufficient to give rise to a claim for reformation. Bass's allegations, however, fail to support a claim for reformation based upon either mutual mistake or unilateral mistake. Nor do the facts alleged by Bass indicate that Bass suffered a loss as a result of performing under a contract that was later repudiated entitling Bass to restitution. Because Bass's amended complaint fails to allege facts sufficient to raise a claim for relief under a theory of reformation or restitution, the claims proposed to be added by the amended complaint could not survive a

motion to dismiss. Accordingly, leave to amend the complaint should be denied upon the ground that amendment would be futile.

## ARGUMENT

### I. Standard of Review

While leave to amend is to be "freely given when justice so requires," under certain circumstances, including where the amendment would be futile, the Court has discretion to deny leave to amend the complaint. ATK Thiokol, Inc. v. United States, 72 Fed. Cl. 306, 313 (2006) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). A motion for leave to amend is deemed futile "if a claim added by the amendment would not withstand a motion to dismiss." Shoshone Indian Tribe of the Wind River Reservation, Wyoming v. United States, 71 Fed. Cl. 172, 182 (2006). The rules of the Court of Federal Claims allow a motion to dismiss a claim for failure to state claim on which relief can be granted. RCFC 12(b)(6). The Supreme Court, interpreting Federal Rules of Civil Procedure 12(b)(6) and 8(a)[1], stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

In this case, Bass has failed to plead facts which could reasonably be read as giving rise to a claim for relief under a theory of reformation or restitution. Because these claims would not survive a motion to dismiss, leave to amend the complaint should be denied.

---

[1] Case law construing the Federal Rules of Civil Procedure may be used to interpret the RCFC. Shoshone, 71 Fed. Cl. at 177 n.7.

**II. Bass Should Not Be Permitted To Amend Its Complaint To Add A Claim For Reformation Of The Contract Because Such Amendment Would Be Futile**

"Reformation of a contract is appropriate when the written words of the contract fail to express the prior mutual agreement of the parties." Gibbs, A.I.A. v. United States, 358 F.2d 972, 980 (Ct. Cl. 1966). Reformation is regarded as "extraordinary relief." Evans Reams & Machine Co. v. United States, 386 F.2d 873 (Ct. Cl. 1967). "The general rule is that the elements of a claim for reformation must be proved by clear and convincing evidence." See National Australia Bank v. United States, 452 F.3d 1321, 1329 (Fed. Cir. 2006). Reformation may be available on two grounds: (1) mutual mistake, or (2) unilateral mistake in a bid where the Government knew or should have known of a mistake costly to the bidder, especially when coupled with overreaching by the Government. Id.; Bromley Contracting Co., Inc. v. United States, 596 F.2d 448, 454 (Ct. Cl. 1979).

**A. Bass Failed To Set Forth a Claim For Reformation Based Upon Mutual Mistake**

In order to establish a claim of reformation on the basis of mutual mistake, a party must establish four elements: (1) that the parties to the contract were mistaken in their belief regarding a fact; (2) that that mistaken belief constituted a basic assumption underlying the contract; (3) that the mistake had a material effect on the bargain; and (4) that the contract did not put the risk of mistake on the party seeking reformation. National Australia Bank v. United States, 452 F.3d 1321, 1329 (Fed. Cir. 2006). "An erroneous mutual belief about the contents of a written agreement is sufficient to constitute a 'mistake' for this purpose[.]" Id. Thus, reformation is available "when the parties, having reached an agreement and having attempted to reduce it to writing, fail to express it correctly in the writing." Id.; see also Jansen v. United States, 344 F.2d 363, 368 (Ct. Cl. 1966) ("If the intention of both the parties can be established

as something other than contained in the contracts, this court has jurisdiction to reform the contract as an incident to the rendition of a money judgment.").

In Jansen, the Court of Claims declined to reform a contract despite the plaintiff's contention that both parties had intended for the washing and brightening of airplanes to be considered separate payable services. 344 F.2d at 368. Contending that the Government historically had paid for washing and brightening as separate services, plaintiff argued that such separate payments had become an established contractual practice. Id. at 368-69. The Court disagreed: "Even if plaintiff's contention is accepted, we cannot deduce from the record before us that defendant intended any other payment formulae than those which appear on the face of the contracts." Id. at 369. The Court concluded that reformation was inappropriate because plaintiff failed to establish that the Government intended any other scheme of payment than that on the face of the contract. Id.

Just as the plaintiff in Jansen failed to establish that the Government intended any other pay scheme than that appearing on the face of the contract, Bass fails to allege that the Corps intended any rental calculation other than that found in the lease agreement. Rather, Bass alleges in it's amended complaint that "[i]n the event it is determined the term 'Gross Receipts' includes not only Bass' gross income but also the gross income of the sublessees, then the parties were mutually mistaken in their interpretation of the term at the time the Lease Agreement was signed and afterwards for a number of years." Proposed Second Amd. Compl. ¶ 161. This conclusory statement is not supported by the facts alleged in the balance of Bass's complaint. Bass does not allege that the parties both erroneously believed that "gross receipts" included only Bass's gross income, but that the Corps "arbitrarily and unilaterally imposed a *new* requirement that Bass start including sublessee income in Bass' 'Gross Receipts' reported to the Corps." Amd. Compl. ¶ 47

(emphasis added). Moreover, Bass alleges that "[a]t the time the change was imposed, the Corps did not state that Bass was out of compliance with the Lease Agreement. The Corps never gave written notification to Bass that from 1996 to 2002 it was out of compliance with the Lease Agreement." Amd. Compl. ¶ 52. Bass further alleges that it "requested the Corps to put this unilaterally imposed requirement in writing." Amd. Compl. ¶ 51. Therefore, Bass fails to allege any facts which could reasonably lead to the conclusion that the parties to the lease agreement in this case "were mistaken in their belief regarding a fact." See First Australian, 452 F.3d at 1329.

Bass's bare statement that "the parties were mutually mistaken in their interpretation of the term at the time the Lease Agreement was signed and afterwards for a number of years" amounts to little more than the "formulaic recitation of the elements of a cause of action" that the Supreme Court rejected in Bell Atlantic. 127 S.Ct. at 1965. Bass is not contending that it did not understand the pre-existing lease agreement; nor is it alleging that it failed to understand the alleged "new requirement" that the Corps imposed on it beginning in 2003. Rather, Bass is alleging that the Corps breached its agreement with Bass by unilaterally imposing a new requirement on it for reporting its gross receipts. Based on the facts alleged in the amended complaint, however, Bass cannot claim that there was a mutual mistake as to the meaning of "gross receipts" in the lease agreement. Similarly, Bass's proposed second amended complaint fails to allege any new facts that would give rise to such an inference.

**B. Bass Fails To Set Forth A Claim For Reformation Based Upon Unilateral Mistake**

Reformation has been granted in cases where "the Government knew or should have known of a mistake in the bid costly to the bidder….This is especially true where there is evidence of overreaching of the Contractor by the government." Bromley Contracting Co., Inc. v. United States, 596 F.2d 448, 454 (Ct. Cl. 1979). As the Court stated in Bromley, in the case of

unilateral mistake, "[w]hat we are really concerned with is the overreaching of a contractor by a contracting officer when the latter has the knowledge, actual or imputed as something he ought to know, that the bid is based on or embodies a disastrous mistake and accepts the bid in the face of that knowledge." Id.

In Bromley, relied upon by Bass in its motion, the plaintiff mistakenly submitted a bid without including the overhead and profit as part of the bid. 596 F.2d at 452. Plaintiff sent a letter to the contracting officer advising him of the mistake immediately upon discovering it. Id. at 452-53. The contracting officer, upon receiving the letter, arranged a meeting with representatives of the plaintiff. Id. at 453. As the Court stated, "[n]o request for supporting documents was made at the meeting nor did the [plaintiff] present any. They were never advised at the meeting that, if they could support their mistake claim by clear and convincing evidence, they might be able to correct or withdraw their bid." Id. The Court ultimately concluded that "the knowledge [of mistake in the bid]...imputed to [the contracting officer] establishes that he overreached the plaintiff by accepting its bid, and not allowing either correction or withdrawal of it, even though he should have known that it was mistaken." Id. at 459. Moreover, the Court stated, "[t]his has been characterized as a clear-cut violation of law…and since rescission is no longer possible, reformation is an appropriate remedy in the situation." Id.

Because Bass fails to allege facts giving rise to a reasonable inference of mistake on the part of *either* party, Bass has not adequately alleged that it is in the position of the plaintiff in Bromley. Instead, Bass alleges that the Corps unilaterally changed the rent provision without committing that change to writing. This situation, however, does not amount to a "mistake" wherein the parties failed to express adequately their intentions in the lease agreement. The plaintiff in Bromley clearly demonstrated that it was mistaken as to the amount of its bid, and

that the Government was aware of its mistake. Here, Bass has failed to demonstrate any mistake on its part as to the meaning of the rent provisions, and that the Government was aware of any mistake. Moreover, Bass has not alleged any facts demonstrating that the Government engaged in overreaching in entering into the lease agreement with Bass.

Thus, Bass, having failed to plead facts which can reasonably give rise to an inference of mistake on the part of either party, fails to allege adequately either mutual mistake or unilateral mistake and overreaching by the Government, and thus fails to state a claim for reformation of the contract. Because the claim proposed to be added by the second amended complaint would not survive a motion to dismiss, the amendment is futile. Accordingly, Bass's motion for leave to amend the complaint should be denied.

**III. Bass Should Not Be Permitted To Amend Its Complaint To Add A Claim For Restitution, Because Such Amendment Would Be Futile**

Bass also seeks to amend its complaint to add a claim for restitution. "When one party to a contract repudiates that contract, the other party is entitled to restitution for any benefit that he has conferred on repudiating party by way of part performance or reliance." Landmark Land Co. v. FDIC, 256 F.3d 1365, 1371-72 (Fed. Cir. 2001) (quoting Mobil Oil Exploration Prod. Southeast, Inc. v. United States, 530 U.S. 604, 608 (2000)) (internal quotation marks omitted). "The idea behind restitution is to restore the non-breaching party to the position he would have been in had there never been a contract to breach....Thus, restitution restores to the non-breaching party the net loss he suffered as a result of his performance under the contract." Id.

In Landmark, the Federal Circuit held that the plaintiff was not entitled to restitution damages when it made contributions to a savings and loan that it was not required to make under its contract with the FDIC. 256 F.3d at 1375. The Court stated, "[t]he law is well-settled…that in order to be compensable as restitution, the plaintiff's contribution must have been made in the

performance of its contractual obligations." Id. (citing Tanglefeldt Wood Prods., Inc. v. United States, 733 F.2d 1574, 1577 (Fed. Cir. 1984)). The Court found the cases relied upon by the plaintiff in support of its contention that it was entitled to restitution because it had a right to make the contributions under the contract, First Nat'l City Bank v. United States, 548 F.2d 928 (Ct. Cl. 1977), and N. Star Alaska Housing Corp. v. United States, 30 Fed. Cl. 259 (1993), were inapposite because "[c]ritically…in both cases, restitution was awarded to compensate the plaintiff for performance of a contractual obligation." Id.

Restitution is available only for loss incurred as a result of performance of contractual obligations under a contract later repudiated or breached by the other party. For Bass to state a cognizable claim for "restitution of the amounts of excess rent paid from 2003 when the Corps required Bass to follow the Corps new position through the disposition of this case" (Proposed Second Amd. Compl. at ¶169), Bass must allege facts that reasonably give rise to an inference that it paid that rent in performance of a duty under the contract that has been repudiated by the Government. The facts alleged by Bass in its amended complaint, however, do not reasonably give rise to such an inference. For example, as discussed above, Bass alleges that "[i]n early 2003, the Corps arbitrarily and unilaterally imposed a new requirement that Bass start including sublessee gross income in Bass' 'Gross Receipts' reported to the Corps." Amd. Compl. ¶ 47. Bass also alleges: "The Lease Agreement requires amendments to the lease be in writing. Bass requested the Corps to put this unilaterally imposed requirement in writing. The Corps refused to do so." Amd. Compl. ¶ 51. Moreover, Bass alleges that "[s]ince the Corps has imposed the change, Bass has added what it reasonably believes to be the sublessees' gross income to the Gross Receipts number reported to the Corps and in calculating rental payment. This caused and continues to cause Bass to pay more rent than is *due under the Lease Agreement*." Amd. Compl.

¶ 54 (emphasis added). Thus, from the face of its complaint, Bass has failed to allege that the Corps ever repudiated the lease agreement.

The alleged facts are only susceptible to two interpretations: (1) the Corps allegedly breached the contract by unilaterally imposing the change in rental payment structure, and Bass was never under any contractual obligation to pay the increased rent; or (2) the allegedly new requirement imposed by the Corps represented a modification to the existing contract or a new contract, which the Corps has neither breached nor repudiated. In either case, Bass would not be entitled to restitution for the alleged excess rent paid from 2003 to the present. If the unilateral action by the Corps represented a breach, and Bass was not contractually obligated to pay the extra rent, then Bass's payment of that extra rent is not performance of a contractual duty for which restitution is appropriate. Moreover, if the change by the Corps represented a modification of the existing lease agreement or a new agreement, Bass alleges no facts supporting an inference that the Corps breached or repudiated that new agreement. Accordingly, Bass's alleged payment of extra rent under that agreement is not compensable by restitution.

Because Bass has failed to allege facts reasonably giving rise to an inference that it paid the allegedly excess rent in performance of a contract later breached or repudiated by the Corps, Bass has failed to state a claim for restitution. Because the claim for restitution would not survive a motion to dismiss, the amendment is futile, and leave to amend the complaint should be denied.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that Bass's motion to amend the complaint be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

KATHRYN A. BLEECKER
Assistant Director

s/ David M. Hibey
DAVID M. HIBEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 307-0163
Fax: (202) 514-8624

July 23, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 23rd day of July, 2007, a copy of the foregoing "Defendant's Opposition to Plaintiff's Motion to Amend" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David M. Hibey