**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BASS MANAGEMENT, INC.**

**PLAINTIFF**

**VS.** **CIVIL ACTION NO. 07-056C**

**UNITED STATES OF AMERICA**

**DEFENDANT**

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

Bass Management, Inc. ("Bass") replies to Defendant's Opposition to Plaintiff's Motion for Leave to Amend ("Defendant's Opposition") as follows:

**INTRODUCTION**

1. This contract dispute centers on the interpretation of the "Gross receipts" definition in the Lease Agreement. In the complaint, Bass Management, Inc. ("Bass") demonstrates the definition of "Gross receipts" means Bass' gross income was to be used in calculating rent. The Defendant contends, however, the plain language expands the meaning to encompass the gross income of sublessees, as well as, Bass' gross income.

2. Obviously Bass disagrees with Defendant's expansive reading. If Defendant's argument prevails, however, that means the language used in the Lease Agreement contradicts the intent of the parties at the time it was drafted and signed and the practice for the first six (6) years after signed. The proposed alternative legal theory of relief is reached only if the Defendant's expansive reading prevails.

3. Mistake is a viable basis for seeking reformation of a contract. *See e.g. Bromley Contracting Co., Inc. v. United States*, 596 F.2d 448, (Ct. Cl. 1979). Indeed, the Defendant does not contend the Court lacks authority to reform a contract based on mistake, either mutual or unilateral.

**NO PREJUDICE**

4. Prejudice is "the touchstone for the denial of an amendment." *State of Alaska,* supra *15 Cl. Ct.* at 279 (citing *Cornell and Co., Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d. 820, 823 (3rd Cir. 1978)). Accordingly, "a showing of undue or substantial prejudice is an imperative to warrant the denial of a motion to amend a complaint." *Id.* at 280 (citing *Howery v. United States,* 481 F.2d. 1187, 1190 (9th Cir. 1973). Here the Defendant has not suggested it is prejudiced by the amendment.

**THE AMENDMENT IS NOT FUTILE**

5. Normally, "leave to amend should be freely permitted absent sufficient, explicit reasons indicating that it should be denied." *State of Alaska v. United States*, 15 Cl. Ct. 276, 279 (1988) (citing *Hess v. United States,* 210 Ct. Cl. 483, 537 F.2d. 457, 461 (1976). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Forman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed.2d. 222 (1962). The only reason the Defendant offers for denying the motion to amend is futility.

6. "Where futility is proposed as a basis for denying amending a complaint, courts will discern whether a pleading is frivolous and insufficient on its face or has been adequately addressed in the prior complaint. *Id.* at 280 (citing *Johnson v. Oroweat Foods Co.,* 785 F.2d. 503, 510 (4th Cir. 1986). Here, Defendant contends the proposed Second Amended Complaint is in essence frivolous and insufficient on its face.

7. Specifically, Defendant asserts, "Bass fails to allege that the Corps intended any rental calculation other than that found in the lease agreement" (presumably referring to Defendant's current interpretation of "Gross receipts") and "Bass does not allege that the parties both erroneously believe that 'gross receipts' included only Bass's gross income." Defendant's

Opposition, page 5. The proposed Second Amended Complaint ("Amend. Comp."), however, states "at the time the Lease Agreement became effective, the Corps intended for Bass to report its gross income to the Corps as 'Gross Receipts.'" Amend. Comp. ¶ 39. The Corps knew Bass calculated rent based on its gross receipts. Amend. Comp. ¶ 39. In this context, the Corps' knowledge raises an inference the Corps intended for Bass to use its gross income.

8. Proof of the Corps' knowledge and intent includes the December 1995 transmittal letter of the Contracting Officer. In the letter, the Contracting Officer "instructed, 'Your [Bass'] monthly rent will be 2.3 percent of your [Bass'] total sales…**"** Continuing, it states, "[Y]our total sales' meant the gross income Bass received from its operations within the concession." Amend. Comp. ¶ 34. The letter is an incorporated exhibit. Amend. Comp. ¶ 33. The Contracting Officer's letter and associated factual allegations specify: (1) the who: Contracting Officer; (2) the when: December 20, 1995; (3) the how: by letter; (4) the what was said and intended: pay on your gross sales; and (5) the what was understood: use your gross income. The letter and associated allegation specify a factual basis establishing the Corps' intent that Bass use its gross income to calculate rent. It is this intended meaning of "Gross receipts" that stands in contradiction with the Defendant's current interpretation.

9. In addition, "Bass reasonably believed it was to report and pay rent to the Corps based only on its gross income. Bass' belief was based on the Corps' representations, approval of Hill's sublease… and its practice under the Lease Agreement." Amend. Comp. ¶ 43. In 1998, Bass negotiated a new long term sublease with Hill's Lake Escape. Amend. Comp. ¶ 40. The sublease makes economic sense if Bass used its gross income, which included rent Hill's paid to Bass. Under the Defendant's interpretation of "gross receipts," however, it makes no economic sense because Bass owed more to the Corps on Hill's gross income than it received in rent from Hill's. Amend. Comp. ¶ 42. The Corps reviewed and approved the Hill's sublease. Amend.

Comp. ¶ 40. These circumstances give rise to an inference that the Corps intended for Bass to use its gross receipts in calculating rent. Otherwise one must infer the Corps intentionally contrived by its acts and omission to cause Bass to commit to a long term sublease that costs Bass money.

10. The practice of using Bass' gross income in calculating rent was followed from the inception of the Lease Agreement in January 1996 through 2002. Amend. Comp. ¶'s 43 and 47. The Corps' current interpretation is "contrary to the intent of the parties at the time the Lease Agreement became effective, and was contrary to the practice both before and after the Lease Agreement became effective." Amend. Comp. ¶ 107. For six (6) years Bass used its gross income in calculating rent. Since the Contracting Officer and the Corps knew Bass was using its gross income, it follows that the Corps intended Bass to do so. A similar inference arises from the Contracting Officer certifying in October 2003 that Bass was not in default on any term or condition of the Lease Agreement. Amend. Comp. ¶ 61, 62.

11. The proposed amendment incorporates all prior allegations, including those cited above. Amend. Comp. ¶ 158. It then alleges, "Prior to and at the time the Lease Agreement was signed, the parties reasonably believed that the definition of "Gross receipts" only covered Bass' gross income from business operations within the concession." Amend. Comp. ¶ 160. The proposed amendment alleges that if the Corps' current interpretation is deemed correct, "the parties were mutually mistaken in their interpretation…at the time the Lease Agreement was signed and afterwards for a number of years." Amend. Comp. ¶ 161. Accordingly, "the Lease Agreement must be reformed to reflect the original interpretation and intent of the parties." Amend. Comp. ¶ 161.

12. Even if the Corps claims it was not mistaken, the same facts show that Bass was mistaken. The same facts show the Corps caused the mistake and it was reasonable for Bass to

believe it was to use its gross income. Thus the same factual allegations and inferences establish unilateral mistake if the Defendant's current interpretation prevails and the proof fails to establish mutual mistake.

13. Defendant's contention the proposed amendment "failed to plead facts which can reasonably give rise to an inference of mistake on the part of either party" ignores the above factual allegations and factual inferences. When those allegations and inferences are viewed from the perspective of Defendant's current interpretation of "gross receipts," the mistake is manifest by the contradiction between the intent and practice on the one hand and the interpretation on the other. The count for Reformation and Restitution adequately states a claim so as to allow Bass the opportunity to establish its merits.

**REFORMATION IS REMEDY FOR MISTAKE**

14. Defendant recognizes this Court's authority to reform a contract. Defendant's Opposition, page 4. In a case discussed by Defendant, the Court of Claims states, "If the intention of both parties can be established as something other than was contained in the contract, this court has jurisdiction to reform the contract as an incident to the rendition of money judgment." *Jansen v. United States*, 170 Ct. Cl. 346, 344 F.2d. 363, 369 (1965). The proposed amendment alleges factual circumstances that demonstrate both directly and inferentially that the Contracting Officer and Bass intended for Bass to use its gross income in calculating rent. Accordingly, if the definition is not interpreted consistent with that intent, then the Lease Agreement must be reformed.

15. In *Jansen*, the Court of Claims also recognizes, "It is a canon of construction that the interpretation placed by the parties upon a contract during its performance is demonstrative of their intention." *Id.* at 369 (citing *Universal Match Corp. v. United States*, 161 Ct. Cl. 418 (1963). It is undisputed that for the first six (6) years Bass used its gross income in calculating

rent. This canon shows why the practice for six (6) years gives rise to an inference that the Corps intended for Bass to use its gross receipts. If the language actually used in the Lease Agreement failed to express the intent of the parties as shown by the performance for six (6) years, then it follows as day does night, the contract must be reformed to correct this mistake.

16. In *Jansen* the plaintiff was allowed to develop the facts through discovery and present its case for reformation on the merits. The Court of Claims eventually determined the evidence "as a whole" was not sufficient to establish the Plaintiff was entitled to have the contracts reformed. *Id.* at 369. The Court of Claims, however, did not rule it was an error to give the plaintiff an opportunity to present its evidence on the merits.

17. The United States Supreme Court holding in *Bell Atlantic Corporation v. Twombly*, ___ U. S. _____, 127 S. Ct. 1955 (2007) does not support Defendant's position. *Bell Atlantic* was a putative consumer class action alleging an antitrust conspiracy against local telephone exchange carriers. The conspiracy was based on parallel conduct by the defendants. The Supreme Court noted since parallel conduct can be entirely proper, an allegation of parallel conduct without more is insufficient to allege conspiratorial agreement. *Id*. 1965-1966. The Supreme Court found the Complaint lacked any "allegations plausibly suggesting (not merely consistent with) agreement." *Id.* 1966. Indeed, the Complaint failed to "set forth a single fact in a context that suggested an agreement." *Id.* at 1968-69.

18. In contrast, here the factual allegations and inferences discussed above that demonstrate an intent by Bass and by the Contracting Officer and Corps from late 1995 through 2002 that Bass use its gross income in calculating rent. The Defendant's interpretation inconsistent with that intent. Therefore, it follows if Defendant's interpretation prevails, then a mistake occurred in the language used in the Lease Agreement.

19. Secondly, in *Bell Atlantic*, the Supreme Court was concerned with the high cost of discovery typically associated with antitrust lawsuits. *Id.* at 1967. That is not an issue here. It is a given that Bass has a viable breach of contract claim. The discovery on that claim will substantially overlap, if not duplicate, the discovery on the proposed amendment. Thus, no significant additional cost or time is imposed by the amendment.

20. In another case cited by Defendant, the Court allowed the amendment. *See Shoshone Indian Tribe of the Wind River Reservation v. United States* 71 Fed. Cl. 163, 179 (2006). The Court rejected the defendant's argument the amended claims were futile because the statute of limitations had run. *Id.* at 177. There is no statute of limitations at issue here. The Court also rejected the argument that the amendment was futile because it failed to distinguish between time barred claims and others. The Court found the plaintiff's allegations "arguably invoked" claims recognized by the Federal Circuit. *Id.* at 177. The amendment asserts mistake as alternative relief. As set out above, the amendment contains factual allegations and inferences that specify the circumstances of the mistake, that is, it clearly invokes claims recognized by this Court.

21. The proposed amendment alleges in detail (1) the context of the Lease Agreement execution, (2) the Contracting Officer's intended meaning, (3) Bass' interpretation and reliance on that interpretation, (4) the Corps' knowledge of Bass' interpretation and (5) the use of Bass' interpretation for six (6) years following the effective date of the Lease Agreement. These together with the other allegations in the proposed Count VIII Reformation and Restitution are sufficient to support the alternative relief sought. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *See Sanjuan [v. American Bd. Of Psychiatry and Neurology, Inc.]*, 40 F.3d. [247] at 251 (7th Cir. 1994) (once a claim for relief has been stated, a plaintiff receives the benefit of imagination, so

long as the hypothesis are consistent with the complaint)." *Bell Atlantic Corporation v. Twombly*, *supra*, 127 S. Ct. at 1969. Here, the alternative relief is consistent with the complaint because it relies on the same operative facts. The claim is, however, conditioned upon the Defendant's interpretation of "gross receipts" prevailing.

**RESTITUTION**

22. Generally, a "person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Hamilton Securities Advisory Services, Inc. v. United States*, 60 Fed. Cl. 144, 159-160 (2004) (citing Restatement of Restitution § 1 (1937).) In connection with the reformation of the Lease Agreement, Bass seeks to recover the portion of rent paid to the Corps since 2003 that is attributable to sublessees gross income.

23. "As Professor Palmer explains, the central aim of restitution for a Defendant's breach is to recover benefits transferred by the plaintiff in the performance of the contract. Sometimes restitution will be *in specie* and sometimes in the amount of money payments made by the plaintiff...." *First Nationwide Bank v. United States*, 51 Fed. Cl. 762, 768 (2002) (citing *George E. Palmer*, The Law of Restitution § 4.2 (1978)). *First Nationwide Bank* held restitution can be awarded where the "contract is meaningfully divisible." *Id.* at 769. Here, the excess payment imposed in 2003 is readily separated from the rent due on Bass' gross receipts.

24. Restitution of excess rent is appropriate "to prevent one party at the expense of another, from retaining a benefit to which he is not entitled." *United States v. Bedford Associates*, 713 F.2d. 895, 903 (2nd Cir. 1983). In *Bedford Associates*, the Second Circuit awarded the United States restitution for excess rent and amounts paid by mistake. If the excess rent paid by Bass is not recoverable as damages under the reformed Lease Agreement, then Bass has a restitutional interest in having those funds returned. In short, the Defendant has been unjustly enriched by that amount, thus the excess amount must be returned to Bass.

## CONCLUSION

For reasons stated here and in its Motion for Leave to Amend Complaint, Bass Management respectfully requests the Court to grant to it leave to file the Second Amended Complaint.

Respectfully submitted,

BY: ***/s/Frank W. Trapp***

Frank W. Trapp, MB #8261
PHELPS DUNBAR LLP
111 East Capitol Street • Suite 600
Jackson, Mississippi 39201-2122
P. O. Box 23066
Jackson, Mississippi 39225-3066
Telephone: (601) 352-2300
Telecopier: (601) 360-9777

**CERTIFICATE OF SERVICE**

The undersigned attorney for Bass Management, Inc., does hereby certify that I have this date electronically filed the foregoing Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Leave to Amend Complaint with the Clerk of the Court using the ECF system which sent notification of such filing of the above and foregoing to the following:

David M. Hibey, Esq.
U. S. Department of Justice
Civil Division
1100 L. Street NW
Washington, DC 20530

SO CERTIFIED, this the 31st day of July, 2007.

***/s/Frank W. Trapp***
FRANK W. TRAPP